UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Alysha ADAMS, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>GROSSMONT CUYAMACA<br>COMMUNITY COLLEGE DISTRICT,<br>et al.,<br><br>　　　　　　　Defendants. | Case No.: 23-cv-1220-AGS-DDL<br><br>**ORDER DENYING MOTION TO REMAND (ECF 7) AND GRANTING MOTION TO DISMISS (ECF 2)** |

Plaintiffs sued their community-college employers over COVID-19 vaccine mandates. The defense removed the case here, and plaintiffs now seek remand back to state court. The defense meanwhile moves to dismiss based on mootness and failure to state a claim.

## BACKGROUND

This case's 31 defendants include three community-college districts, their governing boards, and various presidents, chancellors, and employees sued "in their official capacities only." (ECF 1, at 11–13.) In late 2021, defendants "adopted a COVID-19 vaccine requirement" compelling employees to "obtain the vaccine or submit an exemption thereto." (*Id.* at 14, 17, 35–36.) Of the six plaintiffs, five requested religious exemptions, which were granted, and one sought a medical exemption, which was not. (*Id.* at 14–40.) All six claim they were denied reasonable accommodations. (*Id.*)

In March 2023, plaintiffs sued in state court, just a few months before defendants repealed their vaccine mandates. (*See* ECF 1, at 58; ECF 2-2 at 16, 24, 33.) They allege that: the vaccine mandate is preempted by state law (claim 1); the vaccine rules were ultra vires acts (claim 2); the mandate amounts to religious discrimination under the First Amendment in violation of 42 U.S.C. § 1983 (claims 3 and 4); and defendants failed to accommodate—and subjected them to disparate treatment because of—their religious beliefs in violation of Title VII of the Civil Rights Act (claims 5–9). (*See* ECF 1, at 41–55.)

# DISCUSSION

## MOTION TO REMAND

Plaintiffs move to remand this case to state court, arguing: (1) defendants' Eleventh Amendment immunity deprives this Court of original jurisdiction; (2) the removal was untimely; and (3) the state-law claims predominate over the federal ones.

### A. Eleventh Amendment Immunity

Plaintiffs reason that if defendants have Eleventh Amendment immunity, as the defense insists, then this Court has "no subject matter or original jurisdiction" and removal was "improper." (ECF 7, at 4.) That premise is flawed. Eleventh Amendment immunity is "an affirmative defense," not an assertion of "lack of subject matter jurisdiction." *Miles v. State of California*, 320 F.3d 986, 988–89 (9th Cir. 2003). And federal courts have "jurisdiction" over "all civil actions arising under" federal law, such as many claims here. *See* 28 U.S.C. § 1331. Any immunity defense does not affect this Court's jurisdiction. The remand motion on that ground is denied.

### B. Timeliness of Removal

Next, plaintiffs maintain that the removal was late. A removal notice must be filed "within 30 days" of service, as "governed by state law." *Whidbee v. Pierce County*, 857 F.3d 1019, 1023 (9th Cir. 2017) (citing 28 U.S.C. § 1446(b)). The issue here is when "service" was complete. More precisely, the question is: If the defense waives standard service, when is service effective?

In this case, plaintiffs requested that defense counsel "accept service upon you by email." (ECF 13-1, at 4.) All counsel agreed, though one attorney asked that plaintiffs "also provide notice(s) of acknowledgment." (*Id.* at 6, 8, 11.) On May 10, 2023, plaintiffs emailed defense counsel the state-court summons and complaint. (ECF 7-1, at 1–4.) Three weeks later, on May 31, each defense counsel signed and returned a "Notice and Acknowledgment of Receipt." (ECF 1, at 83, 85, 87; ECF 11, at 11.) The case was removed on June 30, 2023.

According to plaintiffs, service was complete when the defense accepted the emailed pleadings on May 10, and thus the 30-day deadline expired weeks before the June 30 removal. (*See* ECF 13, at 1–3.) Defendants, on the other hand, contend that service was not effective until they "signed and returned" the acknowledgment on May 31, which means they timely removed this action exactly 30 days later. (ECF 1, at 83, 85, 87; ECF 11, at 11.)

It is "axiomatic that defects in service may be waived by a responding party either expressly or by appearing in an action." *Ammec Invs., Inc. v. Ifaomilekun, LLC*, No. B314854, 2023 WL 3473663, at *4 (Cal. Ct. App. May 16, 2023). But *when* service becomes effective after such a waiver is a matter of debate in California. Relying on California's "Service by mail" rules, the defense believes that service is effective "when a Notice and Acknowledgment of Receipt [of summons] is executed and returned." (*See* ECF 11, at 12 (citing, among others, Cal. Civ. Proc. Code § 415.30).) But those rules cover service by "first-class mail or airmail," not by email. *See* Cal. Civ. Proc. Code § 415.30(a). The reality is that statutory law offers little guidance here, because California lacks formal procedures for email service or for waiving service. *Compare* Cal. Civ. Proc. Code §§ 415.10–415.95 (California's summons rules, which do not mention waiver) *with* Fed. R. Civ. P. 4(d) (federal summons rule, which provides procedure to "waive service of a summons"). And the state courts have not yet resolved how to deal with service-by-email agreements like the one here.

"Absent controlling authority from the state supreme court, a federal court must predict how the highest state court would decide the state law issue . . . ." *Camenzind v. California Exposition & State Fair*, 84 F.4th 1102, 1114 (9th Cir. 2023) (cleaned up). Happily, this Court need not hazard such a prediction. There are only two ways that the California Supreme Court is likely to resolve this legal dispute, and both support removal. First, California may conclude that agreeing to "email" service—without more—is a limited waiver of the "Service by mail" rules. That is, it waives the requirement of delivery by "first-class mail or airmail" (in favor of email), but it retains the other procedural provisions for mail service. *See* Cal. Civ. Proc. Code § 415.30(a). Under this scenario, then,

service would be "deemed complete on the date a written acknowledgement of receipt of summons [wa]s executed" and "returned to the sender," which was May 31, 2023. *See* § 415.30(c). At least one federal court has adopted this view. *See Hillman v. PacifiCorp*, No. 2:21-cv-00848-MCE-CKD, 2022 WL 597583, at *5 (E.D. Cal. Feb. 28, 2022) (holding that email service was effective "on the date the 'acknowledgment of receipt of summons [wa]s executed and returned'" (citing, in part, Cal. Civ. Proc. Code § 415.30(c))).

On the other hand, the state Supreme Court may decide that an email-service agreement completely waives the "Service by mail" rules, and thus the effective date of service is governed by the terms of the waiver itself. What were those terms here? One defense counsel agreed to email service with the caveat that plaintiffs "provide notice(s) of acknowledgment," which plaintiffs duly supplied. (*See* ECF 13-1, at 6.) Those notices, in turn, stated that "service of a summons is deemed complete on the day you sign the acknowledgment of receipt below." (*See, e.g.*, ECF 1, at 83.) So, service here would again be effective on May 31, 2023—the date of signing.[1] At least one federal court has taken this other path. *See National Foam, Inc. v. Zurich Am. Ins. Co.*, No. 23-cv-03873-LB, 2023 WL 7164914, at *1, *3 (N.D. Cal. Oct. 30, 2023) (noting that even though "plaintiff's counsel" agreed "to accept service of the complaint as of" its emailing, service was not effective until the notice-and-acknowledgement date because "counsel prompted the plaintiff's counsel" "to send him [a] written acknowledgement").

In short, the removal was timely.

**C.   Predominance of State Law**

Finally, plaintiffs argue that the state claims predominate here and urge this Court to remand at least those claims. (ECF 7, at 6.) Federal courts may exercise supplemental

---

[1] If this interpretation prevails, it makes no difference that only one attorney requested an acknowledgment form. Under the "later-served rule," so long as the last-served defendant's removal is timely, earlier-served defendants who "join [the] petition for removal" may also be removed. *Destfino v. Reiswig*, 630 F.3d 952, 956 (9th Cir. 2011); *see also* 28 U.S.C. § 1446(b)(2)(C).

jurisdiction over state-law claims that "form part of the same case or controversy" as the suit's federal aspects. 28 U.S.C. § 1367(a). But if a state cause of action "substantially predominates over" the federal ones, the court "may decline to exercise supplemental jurisdiction." *Id.* § 1367(c)(2). Courts evaluate predomination "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

On each metric this Court must consider, the federal claims are broader. First, the federal issues are more extensive than the state ones. Of the nine causes of action, two are state law-based (alleging legislative preemption and ultra vires action) and seven derive from federal law (including religious discrimination under 42 U.S.C. § 1983 as well as failure to accommodate and disparate treatment of religious beliefs under Title VII). (*See* ECF 1, at 41–55.) Next, consider the proof. Even when there is "substantial overlap between" state and federal claims, "courts generally require a more robust showing of facts" supporting the state cause of action to conclude that it is "the predominant claim." *iSpot.tv, Inc. v. Teyfukova*, No. 2:21-cv-06815-MEMF (MARx), 2023 WL 1967958, at *7 (C.D. Cal. Jan. 25, 2023). Yet all claims here arise from the same factual background: the vaccine mandate. The state claims concern whether defendants—as a general proposition—lacked authority for the mandate, regardless of the plaintiffs' personal circumstances. (*See* ECF 1, at 41–44.) The federal claims, by contrast, rely extensively on the plaintiffs' individual experiences or religious beliefs. (*See id*. at 44–55.) If anything, then, the *federal* claims predominate in terms of proof. Finally, the federal remedies sought are more expansive than the state ones. Plaintiffs request "declaratory judgments" on all claims, but they also seek "nominal damages, compensatory damages," and "permanent injunctive relief" on their federal causes of action. (*See* ECF 1, at 46, 48, 55–58.)

Plaintiffs therefore fail to show that their state claims predominate on any front. And they have not established any other basis to return this case to state court. This Court denies the motion to remand. And it likewise declines the request for reimbursement of removal-related fees.

# MOTION TO DISMISS

Defendants move to dismiss, challenging the sufficiency of the complaint and alleging this Court lacks jurisdiction. (ECF 2-1.) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court accepts "the factual allegations in the complaint as true" and construes them "in the light most favorable to the plaintiff[s]." *GP Vincent II v. Estate of Beard*, 68 F.4th 508, 514 (9th Cir. 2023).

## A. Intelligibility

First, defendants move to dismiss the entire complaint on intelligibility grounds. *See* Fed. R. Civ. P. 8(a)(2), (d)(1); (ECF 2-1, at 18–20). But overall, the complaint is "logically organized, divided into a description of the parties, a chronological factual background, and a presentation of enumerated legal claims, each of which lists the liable Defendants and legal basis therefor." *See Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008). Dismissal "is usually confined to instances in which the complaint is so verbose, confused and redundant that its true substance, if any, is well disguised." *Id.* at 1131. That is not the case here, so the motion is denied as to unintelligibility.

## B. Religious-Discrimination Claims Under 42 U.S.C. § 1983

### 1. *Equitable Relief*

Defendants contend that the requests for declaratory and injunctive relief under § 1983 are moot. (ECF 2-1, at 20–23; *see also* ECF 1, at 46, 48.) A federal court may only adjudicate a case if an "actual controversy" exists "not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) (cleaned up). "The central question for mootness is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *Meland v. WEBER*, 2 F.4th 838, 849 (9th Cir. 2021).

Defendants have already repealed their vaccine mandates, which normally "moots claims for declaratory or injunctive relief." *See Pilz v. Inslee*, No. 22-35508, 2023 WL 8866565, at *1 (9th Cir. Dec. 22, 2023); *see also Brach v. Newsom*, 38 F.4th 6, 11 (9th Cir. 2022) ("Bottom line: there is no longer any state order for the court to declare unconstitutional or to enjoin."). Plaintiffs suggest, however, that the voluntary-cessation exception saves their claims. (*See* ECF 10, at 15.) That is, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already*, 568 U.S. at 91. Yet "in order for this exception to apply, the defendant's voluntary cessation must have arisen *because of* the litigation." *Public Utils. Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1460 (9th Cir. 1996). Not so here. According to the uncontradicted evidence, defendants progressively eased COVID-related restrictions leading up to their recission of the vaccine requirements. (*See, e.g.*, ECF 2-2, at 24, 33 ("Throughout the 2021-2022 year, [defendants] implemented a phased-in reopening, resuming in-person work, instruction, and student services districtwide.").) Defendants then rescinded the vaccine requirement "[b]ased on . . . information" that "vaccine and mask mandates were no longer required for healthcare workers," and the end of "the COVID-19 State of Emergency for California." (*Id.*) So the vaccine requirement was rescinded not because of litigation, but because of the pandemic's changing landscape. *See Brach*, 38 F.4th at 12 (finding case moot when the "State did not rescind its school closure orders in response to the litigation—the orders 'expired by their own terms' after COVID-19 transmission rates declined and stabilized"). The claims for declaratory and injunctive relief are dismissed.

### 2. *Damages*

In addition, the Court dismisses the remaining § 1983 damages claims against defendants, who are all state entities or individuals sued in their official capacities. *See Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 972 (9th Cir. 1994) ("[C]ommunity college districts are dependent instrumentalities of the state of California."). "[N]either a State nor its officials acting in their official capacities are

'persons' under § 1983" and thus cannot be sued under that section. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *cf. Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("A government official in the role of *personal-capacity* defendant . . . fits comfortably within the statutory term 'person'" [under § 1983]." (emphasis added)). Given this ruling, the Court need not address the other § 1983 dismissal arguments.

### C.     Title VII Claims

#### 1.  *Administrative Exhaustion*

Defendants move to dismiss plaintiffs' Title VII claims for failure to exhaust. (ECF 2-1, at 24.) To state "a claim for violation of Title VII," plaintiffs must allege "that they exhausted their administrative remedies." *Williams v. California*, 764 F.3d 1002, 1018 (9th Cir. 2014). In particular, Title VII plaintiffs must "file a discrimination charge with the Equal Employment Opportunity Commission and receive a right-to-sue letter from the Commission." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988); *see also* 42 U.S.C. § 2000e-5(e)(1), (f)(1).

While some plaintiffs purportedly filed charges with state agencies, only plaintiff Hartman alleges he "received a right-to-sue letter." (*See* ECF 1, at 40; *see also id*. at 20, 23.) That letter is a "general requirement" for bringing suit under Title VII. *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008). Thus, all Title VII claims—save Hartman's—are dismissed for failing that prerequisite. Because this defect could be cured "with the subsequent receipt of a right to sue letter" or with a valid excuse for failing to obtain it, the Court grants leave to amend. *See Greenly v. Sara Lee Corp.*, No. CIV. S-06-1775 WBS EFB, 2006 WL 3716769, at *8 (E.D. Cal. Dec. 15, 2006).

#### 2.  *Hartman's Religious-Discrimination Claim*

Hartman's Title VII claim for failing to accommodate his religious beliefs doesn't survive long. (*See* ECF 1, at 51–52.) The first element of such a claim is that plaintiff "had a bona fide religious belief, the practice of which conflicts with an employment duty." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). According to the complaint, Hartman "sought an exemption from the vaccine mandate" "due to a *medical*

condition." (*See* ECF 1, at 51 (emphasis added).) The claim never mentions religious beliefs. (*See id*. at 51–52.) So, it too must be dismissed, albeit with leave to amend.

**D.    State Claims**

Plaintiffs' state-law claims are only for declaratory judgment (*see* ECF 1, at 55), so they are dismissed as moot for the same reason as the § 1983 equitable-relief claims. Now that the vaccine mandate is rescinded, there is "no longer any state order for the court to declare" to be preempted or an ultra vires act. *See Brach*, 38 F.4th at 11.

## CONCLUSION

Plaintiffs' motion to remand this case to state court is **DENIED**, and defendants' motions to dismiss (ECF 2) and for judicial notice (ECF 2-2) are **GRANTED**. The Court orders that:

1. The state-law claims (claims 1 and 2) are **DISMISSED** as moot.

2. The religious-discrimination claims under 42 U.S.C. § 1983 (claims 3 and 4) are **DISMISSED**. Specifically, the § 1983 requests for declaratory and injunctive relief are dismissed as moot. The requests for § 1983 damages are dismissed with leave to amend.

3. The Title VII claims (claims 5–9) are **DISMISSED** with leave to amend.

4. By April 12, 2024, plaintiffs must file any amended complaint. Any amended complaint is limited to only the claims that this Court granted leave to amend.

Dated:  March 15, 2024

Hon. Andrew G. Schopler
United States District Judge